IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ETHAN J. WARNER,** | : | CIVIL ACTION NO. 1:20-CV-496 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **A. MARK WINTER,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Ethan Warner ("Warner") filed this action alleging breach of contract and legal malpractice against defendant A. Mark Winter, Esquire ("Attorney Winter"). (Doc. 1). Attorney Winter moves to dismiss Warner's claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 9). We will grant Attorney Winter's motion and dismiss Warner's complaint with prejudice.

**I.      Factual Background & Procedural History**

Warner is an adult resident of the state of California and the son of the late Mary Warner ("decedent"). (Doc. 1 ¶¶ 1, 4). Warner is one of decedent's three sons. (Id. ¶ 4). In 2013, decedent executed a Declaration of Trust which declared Warner the beneficiary of "one third of [one half] of the trust." (Id. ¶ 5). When decedent moved to Pennsylvania in 2017, she executed an amendment to this trust. (Id. ¶ 6). The trust holds all of decedent's real and personal property. (Id. ¶ 8).

Attorney Winter practices law in Hershey, Pennsylvania, and provides estate planning services. (Id. ¶ 2). In late 2018 or early 2019, decedent met with Attorney Winter to prepare a will. (Id. ¶ 9). Warner alleges that decedent's close friend

accompanied decedent to the meetings with Attorney Winter, and that decedent gave Attorney Winter a copy of the trust documents.  (Id. ¶ 10).  According to Warner, decedent explained to Attorney Winter that "she wanted to distribute her entire estate to Mr. Warner except for certain specific monetary bequests to charities and the other [two] siblings and an in-kind bequest of her residence to her close friends."  (Id. ¶ 11).  Warner further alleges Attorney Winter asked decedent if she wanted to update her trust, and she responded no, ostensibly "because she believed the [t]rust was only effective during her lifetime."  (Id. ¶ 12).  Warner claims Attorney Winter never informed decedent that her trust provisions would supersede her will, or that "she would need to amend or dissolve the [t]rust to effectuate her expressed testamentary intent."  (Id. ¶ 13).

Attorney Winter prepared a will for decedent in February 2019.  (Id. ¶ 14). The complaint alleges that the will provides for Warner to receive "the balance of the estate after certain enumerated specific bequests."  (Id. ¶ 16).  Warner alleges that but for Attorney Winter's failure to amend or dissolve the trust—to give testamentary effect to the will prepared by Attorney Winter—Warner would be entitled to a distribution under the will that "far exceeds" that which he now expects to receive under the trust.  (Id. ¶¶ 13, 16).  Warner estimates that his

distribution would be around $900,000[1] greater under the will than his anticipated distribution under the trust. (Id. ¶ 19).

Warner filed the instant action in March 2020 alleging both legal malpractice and breach of contract. On the legal malpractice claim, Warner alleges that Attorney Winter failed to exercise "the standard of care" of the legal profession to ensure decedent's will reflected her testamentary intent. (Id. ¶¶ 25-27). Because of this failure, Warner "has been deprived of the full legacy" decedent intended for him. (Id. ¶ 28). Warner further alleges that Attorney Winter breached a contract with decedent (presumably an oral or written retainer agreement) because he "accepted payment of fees" from her but "failed to effectuate the distribution" of her estate according to her intentions. (Id. ¶¶ 31, 34). Attorney Winter moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

---

[1] According to an affidavit filed with Warner's opposition brief, the difference is likely much larger. (See Doc. 15 at 14). Warner avers that decedent's estate totals roughly $5 million, and his anticipated distribution under the trust totals around $833,333. (See id.) He further claims that if the will was the main vehicle to distribute decedent's assets, his anticipated distribution under the will totals around $3,450,000. (See id.) Thus, the difference could reach as much as $2,616,667 before fees and costs. (See id.)

3

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[]

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Attorney Winter principally challenges Warner's claims for lack of "standing" to assert either legal malpractice or breach of contract under Pennsylvania Supreme Court precedent.[2] (Doc. 9 ¶ 8). We agree with Attorney Winter that Warner's claims are not cognizable under Pennsylvania law.

In Pennsylvania, a person may sue his own attorney for malpractice using tort or contract theories. See Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 570 (Pa. Super. Ct. 2007) (quoting Garcia v. Cmty. Legal Servs. Corp., 524 A.2d 980, 982 (Pa. Super. Ct. 1987). Until Guy v. Liederbach, 459 A.2d 744, 748-749 (Pa. 1983), however, third-party beneficiaries to an attorney-client relationship were unable to bring suits against the attorney due to lack of privity between the third party and the attorney. Beginning with Guy, the Pennsylvania Supreme Court adopted Section 302 of the Restatement (Second) of Contracts and applied it to named

---

[2] Attorney Winter mischaracterizes his motion under Rule 12(b)(1), which is the proper vehicle for raising challenges to our subject matter jurisdiction for, *inter alia*, lack of Article III standing. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). We recognize that Pennsylvania courts have characterized the argument Attorney Winter raises as one of "standing," (e.g. Guy v. Liederbach, 459 A.2d 744, 747 (Pa. 1983); Estate of Agnew v. Ross, 152 A.3d 247, 248 (Pa. 2017)), but they do so in the general sense of the term, not as the jurisdictional term of art. These state court cases more accurately reflect whether a particular claim is barred. See, e.g., Agnew, 152 A.3d at 248. Our court of appeals has cautioned against conflating merits issues with jurisdictional ones. See Davis, 824 F.3d at 348. Accordingly, we find that Attorney Winter's arguments are appropriately treated under Rule 12(b)(6) and not Rule 12(b)(1).

beneficiaries under a will.  See id. at 751 (citing RESTATEMENT (SECOND) CONTRACTS § 302 (AM. LAW INST. 1979)).

In Guy, the decedent executed a will leaving plaintiff the residue of decedent's estate.  Id. at 747.  Because the drafting attorney allowed the plaintiff beneficiary to witness the will execution, plaintiff's legacy was barred under a since-repealed New Jersey law forbidding a beneficiary from also acting as a witness.  Id.  Plaintiff sued the drafting attorney, and the Pennsylvania Supreme Court allowed her claim to go forward under a contract theory.  Id. at 753.  Guy created a narrow exception to the privity requirement, allowing named beneficiaries to bring a breach-of-contract action against the drafting attorney when those beneficiaries would otherwise "lose their intended legacy due to the failure of an attorney to properly draft the instrument."  Id. at 752.

In Estate of Agnew v. Ross, 152 A.3d 247 (Pa. 2017), the state supreme court construed Guy's limited application of Section 302, and it articulated a two-part test to determine whether an individual can sue as a third-party beneficiary:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the [testator] to pay money to the beneficiary" or "the circumstances indicate that the [testator] intends to give the beneficiary the benefit of the promised performance.

Agnew, 152 A.3d at 253 (quoting Guy, 459 A.2d at 751).   Only if the beneficiary meets both prongs, he can bring a contract claim despite a lack of privity with the drafting attorney.  Guy, 459 A.2d at 751, 753.  Importantly, Pennsylvania courts have interpreted the Guy exception narrowly.  Agnew, 152 A.3d at 262-263 (stating that

6

the Guy court did not eliminate the privity requirement for a negligence action and observing that the Guy court specifically held that third party beneficiary standing should be narrowly tailored).

The instant matter is analogous to Hess v. Fox Rothschild, LLP, 925 A.2d 798, 808 (Pa. Super. Ct. 2007). In Hess, a will established a marital trust for the decedent's husband and a residuary trust for her stepsons. Id. at 801-02. The will also provided for the corpus of the marital trust to pass to the residuary trust when the husband died. Id. at 802. The will allowed the husband to withdraw as much as he desired from the marital trust. Id. When the husband withdrew $5 million shortly before his death, the stepsons consequently received a smaller inheritance from the residuary trust. Id. The stepsons, who were explicitly named in decedent's will, brought suit against the decedent's attorneys "sounding in negligence, breach of contract, [and] intentional breach of the covenant of good faith and fair dealing." Id. at 801. The trial court dismissed the suit based on defendants' preliminary objections, and the dismissal was affirmed on appeal. Id. at 809. The superior court reasoned that Guy carved out an exception for those who *lose* their intended legacy when the lost legacy is clearly contrary to the will's intent. Id. at 808. In other words, Guy did not authorize suit by those who receive *less* than what they expected, particularly when disappointed legatees "do not directly attack the validity of [the] will" or claim that anyone acted "contrary to the explicit provisions" of the will. Id. (citing Guy, 459 A.2d at 752). Intent must be derived from the four corners of the testamentary document. Id. at 808-09.

There are important policy considerations barring the use of extrinsic evidence to prove testamentary intent when estate instruments are properly executed. In Hess, the court noted that permitting plaintiffs' suit to proceed would mean "virtually any legatees, disappointed in their share . . . could mount an indirect attack on the will by bringing suit against the testator's attorney, claiming the will's text did not truly reflect the testator's intent." Hess, 925 A.2d at 808. The court in Agnew echoed this sentiment, stating a decedent's intent "as reflected in the executed testamentary documents, is paramount," and such intent "must be determined from what appears on the face of the will." Agnew, 152 A.3d at 264, 262. Hence, extrinsic evidence "cannot be received . . . independent of the written words employed." Id. at 264; see also Estate of Young v. Louis, 202 A.3d 117, 123, 125 (Pa. Super. Ct. 2018).

In the matter *sub judice*, the parties do not dispute that Warner is a named legatee. According to the complaint, he is named in both the trust, (see Doc. 1 ¶ 5), as well as the will, (see id. ¶ 16). He therefore satisfies the first prong of the Guy test. The second prong is at issue. Warner's complaint alleges decedent's true intent was to bequeath him the residue of her entire estate "after certain enumerated specific bequests" in the will, but he received less because the trust contained all of decedent's property. (See id. ¶¶ 8, 16).

Fatal to Warner's claim is that his belief regarding decedent's wishes do not reach the threshold established by Guy. Similar to the plaintiffs in Hess, Warner

8

"does not directly attack the validity" of the will.³  See Hess, 925 A.2d at 808.  Nor does he claim that the actual legacy he received under the will was less than what the will itself provided.  Cf. Hess, 925 A.2d at 808.  Warner alleges there is a "conflict between the provisions" of the two documents, (see Doc. 1 ¶ 17), but points to no provision of the will that contradicts any provision of the trust, and he does not argue that his legacy as expressly stated in the will or his distribution under the trust was somehow invalidated because of a purported mistake by Attorney Winter.⁴  Cf. Guy, 459 A.2d at 747, 749.  Instead, Warner's claim is premised on his speculation that decedent intended for him to receive more money than he did.  As a precondition to providing relief to Warner, the court would be required to second

---

³ Attorney Winter argues that Warner has resorted to suing him in federal court because Warner is attempting to circumvent the trust's "poison pill" provision.  (See Doc. 10 at 13).  Pennsylvania courts more commonly refer to this type of provision in a testamentary document as an "*in terrorem*" or "no-contest" clause.  See, e.g., *In re* Estate of Fisher, No. 2778 EDA 2012, 2013 WL 11255631, at *1 (Pa. Super. Ct. Aug. 16, 2013).  A no-contest clause seeks to "penalize an interested person for contesting the will or trust or instituting other proceedings relating to the estate or trust."  20 PA. CONS. STAT. § 2521.  Warner seems to acknowledge this reality in his complaint and affidavit, noting the trust contains a provision that prevents him from directly contesting its validity or the validity of a November 18, 2002 will and any codicil thereto.  (See Doc. 1 ¶¶ 5, 7; Doc. 15 at 14).  An April 21, 2017 amendment to the trust expressly incorporates this no-contest clause.  (See Doc. 1 at 12-14).  The complaint further states that "it is unclear if the contest of any later Will would also trigger that [no-contest] provision."  (See Doc. 1 ¶ 5 n.1).

⁴ To the extent Warner premises his claim on the fact that the distributions under the trust and will are different, we note that the language of each document "stands on its own."  See Young, 202 A.3d at 125.  The will and the declaration of trust are independent documents; they do not need to mirror each other to be valid.  See generally CAROLYN BURGESS FEATHERINGILL, ESTATE TAX APPORTIONMENT AND NONPROBATE ASSETS: PICKING THE RIGHT POCKET, 21 CUMB. L. REV. 1, 2-3 (1991) (differentiating between probate and nonprobate assets).

guess the intent of the decedent as expressed in her trust and will.  Such speculation "cannot be used to establish standing."  See Hess, 925 A.2d at 808.

Finally, we discern no ambiguity in the will or trust documents that would allow us to resort to extrinsic evidence.  Warner's argument concerning decedent's oral conversations ignores the long-held principle that ambiguity "must be found without reliance on extrinsic evidence *before* extrinsic evidence" can be considered.  See In re Estate of Tscherneff, 203 A.3d 1020, 1025 (Pa. Super. Ct. 2019) (quoting In re Kelly's Estate, 373 A.2d 744, 747 (Pa. 1977)).  Warner does not allege that the testamentary documents themselves are ambiguous.  (See generally Doc. 1).  See also In re Estate of McFadden, 100 A.3d 645, 656 (Pa. Super. Ct. 2014) (court may "reach outside" text of will and trust only to inform ambiguous language, "not in some relatively unbounded effort to glean [d]ecedent's broader intent").  Warner's allegations about decedent's purported conversations run headlong into the settled rule that we may not consider extrinsic evidence of a testator's intent when that intent is unambiguously reflected "in an executed testamentary document."  See Agnew, 152 A.3d at 262.

In sum, Warner's claim fails because he has not stated a plausible claim under the "narrowly tailored" exception contemplated by Guy.  See Agnew, 152 A.3d at 262 (citing Guy, 459 A.2d at 746, 751, 752).  The will provided Warner with the "rest, residue, and remainder" of the estate, and he does not allege any failure of the bequest.  There is nothing in the four corners of the will or trust documents indicating that what Warner *did* receive was contrary to decedent's intent.  (See Doc. 1 at 8-18).  Warner's complaint only alleges that because the trust held all of

10

decedent's property, his residue share was lower than he expected it to be.  (See Doc. 1 ¶¶ 8, 16).  We conclude that Warner does not fall into the narrow class of named beneficiaries "who lose their intended legacy due to the failure of an attorney to properly draft the instrument."  Cf. Guy, 459 A.2d at 752.

This defect is also fatal to Warner's legal malpractice claim.  The Commonwealth of Pennsylvania does not recognize a third-party beneficiary's right to bring an action on a theory of negligence against another's attorney.  See Guy, 459 A.2d at 753 (rejecting a third-party cause of action in tort and allowing a cause of action in contract only). Warner's claim for legal malpractice fails as a matter of law because he does not allege he was ever a client of Attorney Winter.  As discussed *supra*, the Pennsylvania Supreme Court continues to refuse a cause of action for legal malpractice when the plaintiff lacks privity with the defendant attorney.  See Guy, 459 A.2d at 753; see also Agnew, 152 A.3d at 259; Hess, 925 A.2d at 808; Cardenas, 783 A.2d at 324; Gregg, 649 A.2d at 937 n.1; Fortunato, 2017 WL 3129825, at *5.  The very same line of precedent that Warner relies on for his contract claim forbids his claim for legal malpractice.  Thus, Warner's claim for legal malpractice fails to state a claim for which relief can be granted.

## IV.   Conclusion

We will grant Attorney Winter's motion (Doc. 9) to dismiss because Warner has failed to state a claim upon which relief can be granted.  An appropriate order

11

shall issue.

>                                     /S/ CHRISTOPHER C. CONNER
>                                     Christopher C. Conner
>                                     United States District Judge
>                                     Middle District of Pennsylvania

Dated:    March 3, 2021